## OLIVER W. LULL *et al.*
### *v.*
### LUTHER STONE.

1. CONTRACT — *to convey land* — *warranty*. Where the vendor of land, having only an inchoate title, agrees in his contract of sale to convey "all his right, title and interest, with full covenants of warranty," he is at least bound to keep good and convey such estate as he had at the time of making sale. He can neither convey it to another, nor forfeit it by his own *laches* without discharging his vendee from all obligation to accept and pay for a barren deed.

2. SAME. A, having purchased land from the owner, but not having completed the payment of the purchase money or obtained a deed, sold the same to B, and stipulated in the contract of sale that he would convey his right, title

and interest with full covenants of warranty, on the payment by B, of the notes given by him to A, for the purchase money. There was no default of payment on the part of B, but A, failing to make his own payments to the holder of the legal title, the latter declared a forfeiture of A's contract, and re-sold the land to B, who then refused to pay the notes given by him to A. The assignee of the unpaid notes brought suit: *Held,* that the foregoing facts constituted a good defence against the holder of the notes, unless he stood in the position of an innocent assignee for a valuable consideration.

WRIT OF ERROR to the Superior Court of Chicago; the Hon. JOSEPH E. GARY, Judge, presiding.

This was an action of assumpsit brought at the September term, 1862, by the plaintiffs in error against the defendants in error upon certain promissory notes. The plaintiffs recovered verdict and judgment for only a part of the sum claimed, and sued out a writ of error. The facts appear in the opinion of the court.

Mr. W. T. BURGESS for plaintiffs in error.

This case turns wholly upon the proper construction of a contract where, after reciting a sale of land for a sum of money in installments, the party, who at the time holds a mere equity, agrees on the payment of the last installment to convey by deed all his right, title and interest in the land with full covenants of warranty.

1. Such a deed simply extends to his interest whatever it may be. *Sweet* v. *Brown,* 12 Metcalf, 175; *Allen* v. *Holton,* 20 Pick., 464; *Blanchard* v. *Brooks,* 12 Ib., 66; *Browning* v. *Wright,* 2 Bos. & Pul., 23; *Snell* v. *Young,* 3 Iredell, Law, 379; *Roberts* v. *Forsyth,* 3 Dev., 26.

2. And it was sufficient that Prussing at the time of the contract had some interest which he had not defeated by any act done by him. *Johnson* v. *Tool,* 1 Dana, 479; *Parker and Wife* v. *Perkins,* 8 Cushing, 318; *Crawford* v. *Murphy,* 22 Pa. State Rep., 87, citing 5 Watts & Serg., 51.

Messrs. ARRINGTON & DENT, for defendants in error.

15

Mr. Justice Lawrence delivered the opinion of the court:

The plaintiffs in error have assigned as error:—1st, The sustaining of the demurrer to the third replication. 2d, The erroneous construction given by the court to the contract between Prussing and Stone. 3d, The refusal of the court to give the 7th and 8th instructions asked by the plaintiffs, and 4th, The refusal of a new trial. The counsel adds, however, to his assignment of error, that he seeks only to raise the question of the proper construction of the Stone and Prussing contract, and it is to that point that the argument has been directed. We shall not therefore consider either the pleadings or the instructions, it being conceded that the verdict and judgment are right, on that construction of the contract which we are of opinion must be given to it.

On the 23d of April, 1856, one Prussing sold to Stone, the defendant below, a lot of land in the city of Chicago for $4,620, of which sum Stone paid $1,200 in hand, and gave to Prussing his three promissory notes for the residue, one for $1,372.72, payable May 1, 1857, one for $1,302.93, payable May 1, 1858, and one for $1,233.11, payable May 1, 1859. Prussing, at the same time, executed to Stone a contract reciting the sale of the land, and agreeing, on the payment of the notes, to execute to Stone a deed " of all the right, title, and interest of the party of the first part, of, in and to the above described premises, with the appurtenances, with full covenants of warranty."

At the time of this sale from Prussing to Stone, the former held the lot under contract of purchase from Mrs. Clark, bearing date October 15, 1855, by the terms of which contract Prussing had bought the property for $3,000, and had paid $750 in hand, and executed to Mrs. Clark, his three notes for $750 each, payable respectively in one, two and three years from their date. The contract further provided, that in case of default in the payment of any installment for sixty days after it became due, Mrs. Clark might declare the contract forfeited. Acting under this clause, Mrs. Clark had

declared a forfeiture on the 15th of December, 1857, for non-payment of the note due in October, 1857. When this forfeiture was thus declared, Stone was in no default to Prussing on his contract of purchase, having duly paid his note that matured May 1, 1857. The day after the forfeiture was thus declared, Stone, having already paid to Prussing, $2,572.72, besides the interest, and Prussing's title being now lost, bought the lot from Mrs. Clark, having been notified by her agent that it was again in the market. By his contract with her, he was to pay her the amount still unpaid on his own contract with Prussing, and he paid her in hand the amount then due her on her contract with Prussing, and executed his notes for the remainder. But before this occurred, Prussing had assigned to the plaintiffs, Lull and Mayer, the two unpaid notes of Stone, as collateral security for a debt due them, the notes being not yet due. When they matured, Stone refused to pay them, and Lull & Mayer brought this suit to recover the amount of both notes. Stone, in various pleas, set up the foregoing facts as a defence, and the court below held it good, except as to the amount of the debt due Lull & Mayer from Prussing, for which amount he allowed a recovery, treating the plaintiffs as, to that extent, innocent indorsees for a valuable consideration. Lull & Mayer bring the record here, insisting that they are entitled to recover the full amount of the notes.

The counsel for the plaintiffs in error insists that by the peculiar provisions of the contract between Stone and Prussing, the latter was only to convey his " right, title and interest " in the lot, and that the "full covenants of warranty " which the contract provided the deed was to contain, would apply only to such right, title and interest, and hence, that the fact that Prussing had no title when the time for his conveyance arrived, would be no breach of the covenants to be contained in the deed, and did not make a failure of consideration. In support of this position he cites the cases of *Sweet* v. *Brown*, 12 Met., 175 ; *Allen* v. *Holton*, 20 Pick., 464;

*Blanchard* v. *Banks,* 12 Pick., 66; *Snell* v. *Spring,* 3 Iredell Law Rep., 379, and *Roberts* v. *Forsyth,* 3 Dev., 26.

It is true that some of these cases explicitly hold that, where a deed conveys only the grantor's right, title and interest, the subsequent covenants in the deed, even though full covenants of warranty, are to be considered as having reference merely to the right and title of the grantor, whatever these may be, and hence that the fact that he has no title at. the date of the conveyance, is no breach of the warranty. It is difficult to see, if this be the true construction of such deeds, with what view the covenants were inserted, unless to deceive the grantee with the idea that he was getting covenants upon which he could safely repose for the security of his title, but which a narrow and technical construction would render utterly nugatory, on the day of trial, keeping the word of promise to the ear, but breaking it to the hope. But even conceding that the cases which thus hold, are a true exposition of the law, the case at bar is not within them.

When Prussing sold to Stone, he had an inchoate title to the land under his contract with Mrs. Clark. Giving, then, to his contract the most rigid and technical construction in his power, which would be against all rules for construing contracts, and it still must be conceded that he bound himself by it to make a conveyance which should pass the estate he held in the premises at the date of the sale, and that the covenants to be inserted in the deed should be construed as at least applying to such estate. Such interest as he had when he sold, he would at least be bound to keep good and to convey. He could neither deed it to another, nor forfeit it by his own *laches*, without discharging his vendee from any obligation to accept and pay for a barren deed. It certainly cannot be contended that, if A, owning land, sells it to B, the purchase money payable one half down, and the remainder at the end of a year, and binds himself, on the last payment, to convey merely by deed without covenants, he can, before the year expires, convey the land to a third person, and still insist that by tendering a deed, which would pass no title to

the first purchaser, he could demand and collect the unpaid purchase money.    To allow this would be literally offering a premium to fraud.

There is no substantial difference between this hypothetical case and the one at bar, except so far as such difference is in favor of the defendant.    It is true, in the case before us, the vendor did not lose his title by the affirmative act of conveyance to a third person, but he lost it by his *laches*, by his failure to do what he had bound himself to do, and what the purchaser had a right to  expect would be done, as he must have bought upon the faith that  the vendor would perform his contract, and  thereby perfect his inchoate title.    But in one respect the case at bar is stronger against the vendor, inasmuch as Prussing bound himself to convey by a deed with full covenants, and, as we have already said, these covenants must be considered as at least applying to such estate as Prussing had at the time of his sale. It matters not, then, whether we consider the absolute title to  the land, or the agreement to convey, with covenants, such  estate as he  had at the time of sale, as forming the consideration of the notes; in either case the consideration has wholly failed.    If Stone were in default, perhaps a different question might be presented, but it must be observed that he  is in none.    He paid his second note at its maturity, and, before the  third fell due, Prussing had lost his title.    The  latter then  cannot say that his own *laches* arose from any defalt on the part of Stone.    It is with exceeding ill grace that  he  now insists  that Stone shall pay in full, for what he had bought but never received.  The plain dictates of justice are here in accord with the strict rules of law.

*Judgment affirmed.*

Mr. JUSTICE BREESE dissenting.